**The UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Aubrey Westley MILLER et al.,**
**Defendants-Appellants.**

**Nos. 71-1502 to 71-1504.**

United States Court of Appeals,
Tenth Circuit.

May 25, 1972.

---

1. F.R.Cr.P.

Mark C. Meiering, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., with him on the brief), for plaintiff-appellee.

Richard G. Reinjohn, Los Angeles, Cal., for defendants-appellants.

Before LEWIS, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Aubrey Westley Miller, Donald Earl Laster and Dale Gordon Barkley were convicted on Count II of a three-count indictment of concealing and facilitating the transportation and concealment of approximately 512 pounds of marijuana in violation of 21 U.S.C.A. § 176a. They appeal the jury verdict. Counts I and III were dismissed before trial.

On March 12, 1971 at about 8:00 a. m., a Ford Econoline van and a Chevrolet El Camino pickup truck entered the Port of Entry at Columbus, New Mexico. Laster and Miller were in the van. Barkley and a juvenile, not a party to these proceedings, were in the pickup. Robert Williams, a customs agent, found three marijuana seeds in the front of the pickup. He did not detain the appellants, but he did inform another customs agent of the incident and he described the vehicle. He also conveyed the same information to the U. S. Border Patrol Agency.

After the appellants left the Port of Entry, they drove to Deming, New Mexico, where they rented motel rooms. After breakfast, they showered and slept.

Nearly two hours before appellants passed through the Port of Entry, U. S. Border Patrol Agents Cheadle and Looker discovered footprints of four persons who had crossed the border into the United States. These agents were searching for signs of illegal entry by aliens. They testified that the footprints were larger than those of the usual alien. Agents Cheadle and Looker followed the tracks for several hundred yards away from the border. They

found three large duffel bags hidden in the brush close to the Pancho Villa State Park from which they identified the odor of marijuana. The discovery was reported and a stakeout of the park was ordered.

Several agents conducted the surveillance-stakeout of the Pancho Villa State Park area. They testified that at about 4:00 p. m. on March 12th, a large self-contained mobile home drove into the park. The occupants of the mobile home were later identified as Bill Humphries, Gregory Kruse, Michael Pemberton and Peggy Browne.[1] About 9:30 p. m., the agents noticed that appellants' Ford van had entered the park. It was parked next to the mobile home. A short time before the van arrived, three persons left the mobile home and walked to the west area of the park. They were moving around in the brush as if searching for something. Eventually they re-appeared carrying several bags which they placed near the road on the south side of the park. These bags did not appear to be the same bags which the agents had discovered that morning.

At approximately 11:00 p. m., four persons left the mobile home and walked south toward the Mexican border. The next movement occurred about 1:00 a. m. on March 13, 1971 when four more persons left the mobile home and walked to the south side of the park. They appeared to be bundling something on the ground. About 1:30 a. m. they were joined by four persons coming from the direction of the Mexican border who appeared to be carrying large bags on their backs. Seven persons were next seen carrying the bags to the mobile home while one person stood nearby. Lights were seen in the mobile home for about an hour and one-half after the bags had been delivered there. Two persons were next seen leaving the mobile home. They entered the van. Some three hours elapsed without any activity being noted by the agents. About 6:00 a. m. Miller and Laster left the mobile home and entered the van. About 6:30 a. m. the agents saw the van leave the park. The mobile home left shortly thereafter. Both vehicles were being driven in the direction of Deming, New Mexico.

The agents who conducted the surveillance in the park pursued and stopped both vehicles. A search of the mobile home disclosed six large bags containing about 512 pounds of marijuana. The appellants were in the van. They, as well as the occupants of the mobile home, were arrested and taken into custody.

I.

The appellants challenge the legality of the warrantless search of the mobile home. Predicated upon Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) they argue that: (a) the agents could not have conducted a valid search of either vehicle while on the Pancho Villa Park grounds for lack of probable cause; and (b) that the agents, with prior knowledge of what they intended to search for, could not wait until the vehicles left the park and entered the highway in order to render the warrantless search valid under the exceptions announced in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) and Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

*Chambers, supra,* and *Carroll, supra,* held that an automobile, because of its mobility, may be searched without a warrant where there is probable cause in circumstances that would not justify a warrantless search of a house or an office. The existence of "exigent circumstances" justifies substitution of police judgment as to probable cause in lieu of that of the magistrate. In *Chambers* and *Carroll* the police had

---

[1]. These individuals were named in the indictment along with the appellants. Prior to the instant trial, Kruse, Humphries, Pemberton and Browne pleaded guilty to Count III, conspiracy to acquire marijuana without paying a transfer tax.

probable cause predicated upon reliable information tying the moving vehicles to specific criminal acts.

The United States Supreme Court held that the same "exigent circumstances" found in *Carroll* and *Chambers* did not exist in *Coolidge, supra.* There the police entered Coolidge's home where he was arrested under authority of a warrant. His car was parked in the driveway to his house. Prior to the arrest the police knew of the car's probable connection to the murder. The Court noted there was no way that either Coolidge or his wife could gain access to the car since the police guarded the Coolidges' premises. In none of the cases cited by appellants were the vehicles used as the instrumentalities of an apparent continuing series of criminal acts.

On two specific occasions during the surveillance the agents observed large bags being handled near or being taken into the mobile home The agents did not know how many more bags might be delivered or how many more persons and vehicles might have become involved. Their surveillance was not concentrated on one person, one isolated action, or one vehicle, but rather on a continuing series of activities involving a number of persons unknown to them, and at least two vehicles. Their stakeout covered the perimeter of the park. It is only with the advantage of hindsight provided by the record that we can state that because there was no apparent activity on the park grounds between the hours of approximately 3:00 a. m. and 6:00 a. m. that one or more of the agents may have been able to drive into Deming, prepare and execute an affidavit and obtain a search warrant for entry and search of the mobile home before it left the park. This possibility does not dictate the necessity of a search warrant under the circumstances.

■ In determining whether a search warrant should have been obtained, we must evaluate the circumstances as they would have appeared to prudent, cautious and trained police officers. Trusty v. State of Oklahoma, 360 F.2d 173 (10th Cir. 1966) ; Murray v. United States, 351 F.2d 330 (10th Cir. 1965), cert. denied 383 U.S. 949, 86 S.Ct. 1207, 16 L.Ed.2d 211 (1966) ; Chappell v. United States, 119 U.S.App.D.C. 356, 342 F.2d 935 (1965). At about 1:00 a. m., the agents knew that they were dealing with at least eight persons and two vehicles. At different intervals of that night they observed several groups of persons leave the mobile home and venture out into the desert. Shortly after 1:30 a. m., eight persons were seen at or near the mobile home in possession of large bags. The persistent surveillance was firmly grounded on the detection of the odor of marijuana from the original duffel bags by agents with years of experience. This isolated region of New Mexico was ideal for smuggling from Mexico. The suspicious activities of the appellants in the park, combined with the belief that the bags contained marijuana, met the probable cause requirement justifying the highway arrests and search of the mobile home. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) ; Roa-Rodriquez v. United States, 410 F.2d 1206 (10th Cir. 1969).

■ The appellants stress Agent Skelton's testimony that he was unsure whether his detection of the odor of marijuana from the three duffel bags discovered hidden in the park was sufficient to support the probable cause requirement for a search warrant. His subjective state of mind did not objectively render the cause any less than reasonable. The warrantless search of the mobile home was reasonable under the totality of the facts and circumstances.

## II.

The appellants contend that Agent William Garcia's testimony was ambiguous and inconsistent and should not have been admitted. Garcia drove Miller and Laster to Las Cruces, New Mexico after their arraignment. Garcia testified that

in response to questions he posed concerning the price of marijuana in Mexico, Miller stated that "he" or "we" paid $8.00 a pound for it. Miller and Laster testified that Miller said "you" could buy it for $8.00 a pound. Garcia, on cross-examination, stated that Miller might have used the pronoun "you" but that he did not remember.

■ The doubt expressed by Garcia concerning Miller's statement affects the weight of Garcia's testimony and not its admissibility. The admission of evidence lies largely in the trial court's discretion and will not be set aside on appeal except for a clear abuse of discretion. United States v. Wainwright, 413 F.2d 796 (10th Cir. 1969), cert. denied 396 U.S. 1009, 90 S.Ct. 566, 24 L.Ed.2d 501 (1970). Jurors are charged with the duty of assessing the credibility of witnesses. The evaluation of credibility is not a function for the appellate court. United States v. Sierra, 452 F.2d 291 (10th Cir. 1971); Chavez v. United States, 258 F.2d 816 (10th Cir. 1958); Word v. United States, 199 F.2d 625 (10th Cir. 1952). There was no error in admitting Garcia's testimony.

■■ The appellants allege that they were not allowed to fully cross-examine Agent Garcia. Appellants' attorney developed, on cross-examination, that Garcia did not remember whether Miller stated that "he" or "we" had paid $8.00 a pound or that "you could buy it" for $8.00 a pound. On re-cross-examination appellants' attorney attempted to further examine Garcia about the same matters. His interrogation was repetitive. The Court prevented further development of his argument. The trial court is vested with discretion in determining proper limits of cross-examination and its discretion will not be disturbed unless clearly prejudicial. United States v. Jorgenson, 451 F.2d 516 (10th Cir. 1971) cert. denied 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793; Whitlock v. United States, 429 F.2d 942 (10th Cir. 1970). The Court did not err.

■ Barkley contends that the Court erred in admitting the testimony of Agent Garcia concerning the alleged incriminating statements of Miller, since Barkley was not present when the alleged statements were made. Barkley cited both before the trial court and this court the case of O'Neil v. Nelson, 422 F.2d 319 (9th Cir. 1970) to support his assertion that he was denied the right to effectively cross-examine Miller. He did not in the trial below or on appeal here point out that the decision relied upon was reversed on appeal to the United States Supreme Court in Nelson, Warden v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971) where the Court held that:

> ". . . where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments." 402 U.S. at 629–630, 91 S.Ct. at 1727.

But even if the reliance on O'Neil, supra, had not been misplaced, Barkley effectively waived his right to severance when he failed to so move after the Trial Court, out of apparent concern for the application of O'Neil urged upon it by Barkley, stated that a severance would be granted if a motion were made. United States v. Porter, 441 F.2d 1204 (8th Cir. 1971), cert. denied, Harrison v. United States, 404 U.S. 911, 92 S.Ct. 238, 30 L.Ed.2d 184 (1971); United States v. Koritan, 182 F.Supp. 143 (E.D.Pa.1960), aff'd 283 F.2d 516 (3rd Cir. 1960).

Throughout the trial the Court diligently sought to protect the appellants' rights. After the jury was sworn the Court was informed that the prosecution intended to call Agent Garcia. The United States Attorney became aware of Garcia's knowledge of Miller's remarks only a few days before trial. Because appellants' counsel was not previously

informed of the prosecution's reliance on Garcia's testimony, the Court offered a continuance. The offer was declined.

The range of waiver is wide. Barkley knew of his right to a continuance and to move for severance. He intelligently determined not to avail himself of either. Under such circumstances an accused cannot be permitted to elect to pursue one course at the trial and then, when that has proved to be unprofitable, to charge deprivation of a fair trial on appeal. Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943); Puckett v. United States, 314 F.2d 298 (10th Cir. 1963).

### III.

 The appellants contend that the prosecutor's remark during argument to the jury regarding the appellants' failure to call their co-defendants to testify was prejudicial and that the Court's failure to instruct the jury to disregard the comment requires reversal. We disagree. Although their co-defendants had pleaded guilty to Count III of the indictment, they were still subject to prosecution under Count II. Under these circumstances, it could be assumed that the co-defendants would invoke the Fifth Amendment privilege if subpoenaed to testify in the instant case. For this reason it was improper for the prosecutor to make the remark. It raised an inference that the testimony of the co-defendants would be damaging to the appellants. Counsel for the appellants objected. The Court instructed the prosecutor to cease with this argument. In Smith v. United States, 119 U.S.App. D.C. 22, 336 F.2d 941 (1964), cert. denied 385 U.S. 1017, 87 S.Ct. 736, 17 L. Ed.2d 554 (1967), a similar incident occurred. There the Court held that timely and forceful intervention by the trial court negated prejudicial error. That rule applies here. Bailey v. United States, 410 F.2d 1209 (10th Cir. 1969), cert. denied Freeman v. United States, 396 U.S. 933, 90 S.Ct. 276, 24 L.Ed.2d 232 (1969).

### IV.

 The appellants claim that the Court erred in refusing to give a requested instruction which stated that knowledge of the fact a crime is being committed even when coupled with presence at the scene is not sufficient to convict for aiding and abetting. King v. United States, 402 F.2d 289 (10th Cir. 1968). It is not error to refuse to give a requested instruction if the same subject matter is adequately covered in the general instructions. Kreuter v. United States, 376 F.2d 654 (10th Cir. 1967), cert. denied 390 U.S. 1015, 88 S.Ct. 1267, 20 L.Ed.2d 165 (1968).[2] The jury was adequately informed that it must find that Miller, Laster, and Barkley had actively participated in the crime in order to be guilty of aiding and abetting.

### V.

The appellants contend that certain errors were committed which, cumulatively were prejudicial. They complain that: (1) the Government failed to comply with the Omnibus rules; (2) the Court refused to ask proffered voir dire questions; and (3) the Court abused its discretion in failing to allow the introduction of pictures taken by the appellants in Mexico. We have carefully reviewed the record. These contentions are without merit.

### VI.

 The appellants contend that the evidence is insufficient to support their convictions. On appeal we review the evidence only to determine whether, in viewing the evidence in the light most favorable to the Government, the jury was justified in finding beyond a rea-

2. The instruction given was:
 In order to aid and abet another to commit a crime it is necessary that the accused willfully associate himself in some way with the criminal venture, and willfully participate in it as he would in something he wishes to bring about; that is to say, he willfully seek by some act or omission of his to make the criminal venture succeed.

sonable doubt that the defendants were guilty of the offense charged. Mares v. United States, 409 F.2d 1083 (10th Cir. 1968), cert. denied 394 U.S. 963, 89 S.Ct. 1314, 22 L.Ed.2d 564 (1969). Although none of the participants in the night time activity was ever positively identified in the park, there were eight persons involved in packing and carrying bags containing marijuana during that night. Not one of the eight left the area of the mobile home and the van between 3:00 a. m. and 6:30 a. m., when the two vehicles departed. After the two vehicles left they were under constant surveillance until they were stopped and searched. The arresting officers found eight persons in the two vehicles.

We affirm.