**UNITED STATES of America, Plaintiff,**

v.

**Richard Winiford MADDOX and Howard Burnell Grant, Defendants.**

**Crim. No. 76–21.**

United States District Court,
W. D. Oklahoma,
Criminal Division.

Feb. 4, 1976.

David L. Russell, U. S. Atty., Oklahoma City, Okl., for plaintiff.

Carroll Samara, Oklahoma City, Okl., for Maddox.

Reid Robison, Oklahoma City, Okl., for Grant.

## ORDER

DAUGHERTY, District Judge.

Defendant Howard Burnell Grant has filed a Motion to Suppress certain evidence to which Plaintiff has filed a Response in Opposition. On January 20, 1976, the Court conducted an evidentiary hearing on said Motion and arguments of counsel for both parties were heard. The instant Motion to Suppress has two facets, the first relating to items allegedly seized in the search of an automobile at the scene of Defendant Grant's arrest and the second which concerns oral statements made by Defendant Grant to various law enforcement officers following his arrest.

On December 3, 1975, the Oklahoma City Police Department (OCPD) received word from an informer that Defendant, Richard Winiford Maddox, had attempted to sell, at Ken's Datsun in Oklahoma City, Oklahoma, a stolen 1974 yellow Lincoln Continental Mark IV (Mark IV) which had Alabama 1976 license plate 43–24874, and had two different Vehicle Identification Numbers of 4Y89A861610, and 4Y89A861620. The informer gave the police a description of Maddox and information that Maddox was living with his ex-wife at 8809 S. Kentucky, Oklahoma City, Oklahoma. The informer further advised that Maddox was expecting to receive the next day, December 4, 1975, one or two additional stolen vehicles which were described as Lincoln Continentals. The informer also stated that Maddox was looking for corrupt police officers who he could bribe to falsely sign an Oklahoma Certificate of Title for the stolen 1974 yellow Lincoln Continental Mark IV, which was in his possession. The police arranged a meeting with the informer on the afternoon of December 3, 1975, in Shawnee, Oklahoma, and gave him the name of Tom Bunting, to relay to Maddox as being a corrupt police officer who would receive the bribe. Maddox arranged through the informer a meeting between Tom Bunting and Maddox to take place at the Howard Johnson's restaurant in Oklahoma City that evening.

On the afternoon of December 3, 1975, after talking to the informer, a check was made on the two vehicle identification numbers given by the informer as the two different numbers for the same car. The vehicle identification number 4Y89A861620 checked out to be a 1974 yellow Continental Mark IV, stolen on November 19, 1975, from Columbus, Georgia. The Columbus, Georgia police also informed the Oklahoma authorities on December 3, 1975, that two other cars were stolen in the same manner, and during the same week in the vicinity of Columbus, Georgia. One of these cars was a 1973 Lincoln Continental four-door town car, gold, color, Alabama license plates, (Town Car) which was stolen from Phenix City, Alabama, which is a town approximately one mile across the State line from Columbus, Georgia. The Columbus, Georgia police gave the Oklahoma authorities the VIN of this stolen car as being 3Y82A917227. The Columbus police also stated that there was a car-theft ring operating in the area that was altering VIN's

by one digit and then selling them. The police and the FBI also knew on December 3, 1975, that the license number of the Mark IV that the informer had given matched a Mazda, not a Lincoln Continental Mark IV.

At about 9:30 P.M. on December 3, 1975, the police and the FBI agents met at Howard Johnson's. The police officers and the agents of the FBI observed Maddox's car, the Mark IV, in the parking lot of Howard Johnson's which matched the license number and description of the stolen Mark IV given to them by the informer.

That night, December 3, 1975, the police and FBI all observed Maddox complete a $50.00 bribe to Officer Bunting in the Howard Johnson's restaurant. The bribe agreement was that in return for $50.00, the Officer would falsely swear to the validity of the Certificate of Title to the stolen Mark IV. The false Certificate signed by Officer Bunting that night bore VIN 4Y89A861610, which was one number off from the true VIN of the car stolen in Columbus, Georgia.

On December 4, 1975, the same FBI agents who had observed the bribe the night before, and who had been fully informed of all the information previously known to the Oklahoma City Police Department observed Maddox exit the house at 8809 S. Kentucky, which had been the address supplied by the informer. They observed Maddox drive away in the car known to be a stolen Mark IV. They followed Maddox to the Crossroads Mall Shopping Center, where they observed a man later to be identified as Defendant Howard Burnell Grant arrive, driving a gold four-door Lincoln Continental Town Car bearing 1976 Alabama license 6–9451. Maddox pulled alongside of Grant's car and Maddox entered Grant's car and they were observed talking for about ten minutes. Grant was then observed following Maddox in their respective cars to 8809 S. Kentucky and entering the residence together. Grant was later seen kneeling by the door of the Mark IV in the area of the safety inspection sticker for a period of time with Maddox observing. Both individuals then departed

in the Town Car driven by Maddox. Grant, Maddox and a third person all returned in the same car and Grant was seen removing the license number of the Mark IV and replacing it with Oklahoma tags. The third individual then departed, driving the Mark IV. Grant and Maddox were then observed appearing to be working for a period of time in the area of the safety inspection sticker on the driver's door of the Town Car. At that point, the FBI and Oklahoma City Police Officers approached and arrested Maddox and Grant. Between the time the police and the FBI had first seen the Town Car at about 9:45 A.M., and the time of the arrest at 1:40 P. M., an FBI agent had radioed into his office the license number of the Town Car, Alabama License 6–9451. The FBI office called Birmingham, Alabama, which checked the license and found that it was registered on November 26, 1975, and had a vehicle identification number of 3Y82A917221, which was one digit off from the automobile stolen in Phenix City, Alabama, on November 25, 1975, VIN 3Y82A927227. This information was relayed by radio to the FBI Agents and Police Officers before they made the arrests of Maddox and Grant at 1:40 P.M., December 4, 1975.

At the same time and place of the arrests, while the car was still at 8809 S. Kentucky, Oklahoma City, Oklahoma, a search was made of the Town Car which showed that the top view of the Vehicle Identification Number was 3Y82A917221 and the bottom view, true VIN was 3Y82A917227. The Federal Safety Certificate on the driver's door had been altered by obliterating the last number. A Georgia Certificate of Inspection on the Town Car was found in the glove compartment. A keyring with the initials HG, as well as the Alabama license tag from the Mark IV were found in the Town Car.

Immediately upon Grant and Maddox being arrested, they both were fully advised of their *Miranda* rights by an Officer of the Oklahoma City Police Department. At this time, both Grant and Maddox did make statements to the Oklahoma City Police De-

partment. At the close of the conversation Grant said he would not say any more as the Officers knew it all and would get them all.

At the Oklahoma City Jail on December 4, 1975, shortly after his arrest, but before Federal charges had been filed, Defendant Grant was interviewed by the FBI. He was fully advised of his rights which he stated he understood. Although he did not sign the written waiver of rights form, Grant did make a short statement and then requested an attorney, or to remain silent at which time the interview was immediately terminated.

Grant testified that while under arrest in the Police car he stated several times that he wanted to see an attorney and believed that he made these requests before he was asked any question by Officers or gave any answers. He also testified that he told the FBI Agent at the jail interview that he wanted an attorney.

In respect to the requested suppression of the tangible evidence obtained from the search of the Town Car Defendant Grant relies primarily on the holdings of the case of *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) contending that the search involved was made after he was placed under arrest and that the Officers therefore had a duty to obtain a warrant for said search. Defendant Grant further contends that the search involved was not justified as "incident" to his arrest citing *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In regard to the reported statements by Defendant Grant to arresting Officers, the Defendant contends that such statements were taken in violation of the standards established in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The Government in their Response urges that the law enforcement officials had probable cause to arrest Defendant Grant without an arrest warrant under the circumstances involved herein. The Government further contends that the search of the automobile made incident to this arrest was proper without a search warrant pursuant to the holdings of the case of *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The Government urges that Defendant Grant's reliance on the *Coolidge, supra,* case is misplaced as same involved a defective search warrant and there was no showing of exigent circumstances justifying the search of the automobile involved without a search warrant. In regard to the alleged statements made by Defendant Grant to law enforcement officials, the Government contends that same were made in compliance with the *Miranda* doctrine.

■ The Court finds that the Officers had probable cause to arrest Defendant Grant without an arrest warrant based on the information they possessed while he was in possession of the Town Car, an automobile which they had probable and reasonable cause to believe had been recently stolen.

The test of probable cause as to the arrest applied in the Tenth Circuit is found in *United States v. Troutman*, 458 F.2d 217 (Tenth Cir. 1971), in which the Court stated:

> ". . . It has been held that to constitute probable cause for an arrest [without warrant], it must be shown that at the time the officer makes the arrest the facts and circumstances within his knowledge and of which he had reasonable trustworthy information are such as would warrant a prudent man in believing that the person to be arrested has committed an offense."

> \* \* \* \* \* \*

> "It has also been held that probable cause is to be determined by the courts on the basis of the collective information of police involved in the arrest, rather than exclusively on the extent of the knowledge of the particular officer who may actually make the arrest." ·

The Defendant does not contend that there was no probable cause for either the arrest or the search of the automobile. He could not. Here the Officers had ample probable cause to believe that the Town Car

in the possession of Defendant Grant in Oklahoma City, Oklahoma, was the Town Car reported as recently stolen in Phenix City, Alabama, and thus probable cause to arrest Grant without a warrant. The Officers also had probable cause to search the car on the spot as it was a fleeting target for a search and contained evidence as to its correct identity by VIN which the Officers had reasonable cause to believe was being obliterated or changed.

■ Chambers v. Maroney, supra, stands for the proposition that if there is probable cause an automobile, because of its mobility, may be searched without a warrant in circumstances that would not justify a warrantless search of a house or office. Stone v. Patterson, 468 F.2d 558 (CA10 1972). Defendant Grant's reliance on Coolidge, supra, is based on the argument or theory developed in said case that as the police knew of the presence of the automobile and had planned all along to seize it, there were no exigent circumstances justifying their failure to obtain a valid search warrant and the evidence obtained in the unconstitutional search and seizure of the automobile was inadmissible. This contention is adequately negated by the holding in Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) where the Court stated:

"Respondent contends that here, unlike Chambers, probable cause to search the car existed for some time prior to arrest and that, therefore, there were no exigent circumstances. Assuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforseeable and arises only at the time of arrest. Cf. Chambers, id., at 50–51, [90 S.Ct., at 1980–1981, 26 L.Ed.2d 419]. The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action."

See also, U. S. v. Pollard, 466 F.2d 1 (CA10 1972).

In the instant case exigent circumstances existed as it was necessary that the Officers make an early determination of any evidence in the Town Car which would give or reveal the proper VIN of same. The car itself was stolen and the individuals had been observed to be engaged in suspicious activity about the car, unlike in Coolidge, supra, where the car belonged to the accused and, the Court pointed out, was not then being used for any illegal purpose. As explained by the Court in United States v. Miller, 460 F.2d 582 (Tenth Cir. 1972) in connection with the search of a mobile home:

". . . The existence of 'exigent circumstances' justifies substitution of police judgment as to probable cause in lieu of that of the magistrate." 460 F.2d at 585.

"In determining whether a search warrant should have been obtained, we must evaluate the circumstances as they would have appeared to prudent, cautious and trained police officers." 460 F.2d at 586.

Under the circumstances established in this case, there were "exigent circumstances" not found in Coolidge, supra, and the Officers were justified in proceeding without a warrant.

Defendant's reliance upon Chimel v. California, supra, is misplaced. That case did not foreclose or limit the search of an automobile contemporaneous with an arrest where probable cause and exigent circumstances exist. On its facts Chimel held that upon entering a residence the arresting officer may search the person arrested to discover and remove weapons and to seize any evidentiary items which might be concealed or destroyed and limited the area which might be searched without a warrant to that within the arrestee's immediate control wherein he might grab a weapon or destruct evidence and the court noted:

"Our holding today is, of course, entirely consistent with the recognized princi-

ple that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants 'where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' *Carroll v. United States,* 267 U.S. 132, 153 [45 S.Ct. 280, 285, 69 L.Ed. 543]; See *Brinegar v. United States,* 338 U.S. 160 [69 S.Ct. 1302, 93 L.Ed. 1879]." 395 U.S. at 764, Note 9, 89 S.Ct. at 2040, 23 L.Ed.2d at 694.

The Supreme Court has continued to recognize there is a constitutional difference between houses and cars. *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

In the case of *Chambers v. Maroney, supra,* decided subsequent to *Chimel,* it is stated:

"In terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office. In *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 [39 A.L.R. 790], (1925), the issue was the admissibility in evidence of contraband liquor seized in a warrantless search of a car on the highway. After surveying the law from time of the adoption of the Fourth Amendment onward, the Court held that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize." 399 U.S. at 48, 90 S.Ct. at 1979, 26 L.Ed.2d at 426.

Moreover, under the circumstances of this case, the search of the vehicle was not inconsistent with the principles of *Chimel* and was authorized as an incident to the lawful arrest of the Defendant. *United States v. Gonzalez-Rodriguez,* 513 F.2d 928 (Ninth Cir. 1975) (evidence seized from camper on back of truck); *United States v. Klugman,* 506 F.2d 1378 (Eighth Cir. 1974) (evidence seized from glove compartment); *United States v. Crane,* 499 F.2d 1385

(Sixth Cir. 1974) (bag on floor board of vehicle); *United States v. Marshall,* 499 F.2d 76 (Fifth Cir. 1974) (sawed-off shotgun under front seat seized after driver had alighted from vehicle); *United States v. Soriano,* 497 F.2d 147 (Fifth Cir. 1974) (suitcases in trunk); *Strader v. Estelle,* 491 F.2d 969 (Fifth Cir. 1974) (evidence seized from glove compartment); *United States v. Frick,* 490 F.2d 666 (Fifth Cir. 1973) (briefcase in back seat of car and defendant standing outside of automobile); *United States v. Minton,* 488 F.2d 37 (Fourth Cir. 1973) (evidence seized from back of van truck). In attempting to reconcile all of the United States Supreme Court decisions relating to the validity of search and seizures after a lawful arrest, the Court of Appeals of this Circuit summarized:

". . . It now appears to be settled that an officer at the time of a lawful custodial arrest may, without a warrant, make a 'full' search of the person of the accused, a limited area within the control of the person arrested, and of an automobile in his possession at the scene of the arrest for the discovery and preservation of criminal evidence." *United States v. Roe,* 495 F.2d 600, 603 (Tenth Cir. 1974).

Accordingly, the Court concludes that the search of the automobile was not invalid merely because the officers had no warrant as it was justified both as a search incident to a lawful arrest and as a search of a "fleeting target" based upon probable cause and exigent circumstances. The Court will allow the introduction of the evidence obtained from such search.

As to the statements made after arrest by Defendant Grant the evidence reveals that proper *Miranda* warnings were given this Defendant after his arrest and apparently he made certain statements before he stated that he would not say any more or wanted an attorney. Any statements made by this Defendant after this should be suppressed including the FBI interview conducted later in the interview room of the jail in which said Defendant was incarcerated. This later interview was related to the offenses at hand and would

not fall within the ambit of the recent case of *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313, United States Law Week, Vol. 44, No. 23, December 9, 1975.