**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 1 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

      v.

RUBY PRADO MANRIQUEZ-
RODRIGUEZ, also known as Ruby
Rodriguez,

    Defendant-Appellant.

No. 98-2203
(D.C. No. CR-97-117-JC)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO, HENRY**, and **BRISCOE**, Circuit Judges.

Defendant Ruby Prado Manriquez-Rodriguez was convicted of one count of

possession with intent to distribute more than one kilogram of heroin, in violation

of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and one count of importing more than

one kilogram of heroin, in violation of 21 U.S.C. § 952(a), 21 U.S.C. § 960(a)(1),

and 18 U.S.C. § 2. She appeals the district court's denial of her motion to vacate

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

her conviction based on ineffective assistance of counsel and prosecutorial misconduct. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

On January 22, 1997, defendant entered the United States from Mexico at the Columbus, New Mexico, port of entry, driving a Toyota pickup truck registered and licensed in her name. Defendant exhibited significant nervousness in response to questioning by a federal immigration inspector and was directed to drive her pickup to a secondary inspection area. A dog trained in narcotics detection alerted near the driver's side front tire of the pickup. When the pickup hood was raised, customs agents noticed a strong odor of vinegar, suggesting to them the presence of heroin. An examination of the engine compartment revealed the bolts that held the air intake manifold in place had been scratched and there was new glue on the engine. Agents dismantled the engine and found a fiberglass container holding approximately ten pounds of heroin. A subsequent search of the passenger compartment of the pickup disclosed, *inter alia*, (1) an airline ticket stub for travel from San Francisco, California, to Morelia, Michoacan, Mexico, on January 18, 1997; (2) a Mexican immigration document dated January 19, 1997, reflecting defendant's entry into Mexico via airplane at the Morelia airport; (3) a road map with a blue line drawn along the route from Morelia to Columbus, New Mexico; and (4) title and registration papers for the pickup in defendant's name.

At trial, defendant was the sole defense witness. She testified she was unaware drugs were hidden in the engine compartment of her pickup. She acknowledged two prior convictions for drug possession, but insisted she was essentially an innocent bystander to her husband's drug transactions. She claimed the pickup was registered to her merely as a convenience to her husband's nephew, Antonio Rodriguez, because he did not have a social security card. Defendant stated she had not driven the pickup except on the day of her arrest.

Defendant claimed she had flown to Morelia from her home in California on January 18, 1997, to pick up the young son of an unidentified female relative of her husband and enroll him in school in California. Defendant stated she picked up the child on January 19 and they drove to California with the child's stepfather and her husband's niece, arriving in California on January 21. As soon as defendant arrived in California, Antonio Rodriguez asked her to drive with him to Palomas, Chihuahua, Mexico, and then drive "his" truck back to California. She agreed and they left immediately. They spent the night in a motel and defendant started home the next morning. She claimed she was nervous at the port of entry because her California driver's license had been suspended and she was on probation.

In closing arguments, the prosecutor underscored the untrustworthiness of defendant's testimony and emphasized defendant had offered no evidence that her

license was actually suspended.  Countering defense counsel's suggestion that no proof had been presented as to when defendant first crossed the border into Mexico with Antonio Rodriguez, the prosecutor pointed out:

> [Defense counsel] says if the truck had entered Mexico at an earlier time there would be a record of it.  Well, he didn't ask a single question of any of these agents about that, and he's got the subpoena power just like I do.  If he wanted you to see the full record of that truck, you're mighty right he would have had it here for you.

Record IV at 249.  After thirty minutes of deliberation, the jury convicted defendant of both counts.

Defendant was initially represented by appointed counsel, but later retained Gary Hill as lead trial counsel.  At her sentencing hearing, defendant argued inadequate legal representation by Hill.  The court postponed the hearing and afforded defendant the opportunity to secure new counsel.  Defendant retained Ramon Acosta, and Hill and local counsel were permitted to withdraw.

Almost six months after the jury's verdict, defendant, through Acosta, filed a "Motion to Vacate Jury Verdict" on the sole ground of ineffective assistance of counsel.  At the evidentiary hearing, defendant called four witnesses: (1) Hill; (2) Hill's investigator; (3) defendant's father; and (4) defendant.  At the conclusion of the hearing, the court held Hill's representation was not ineffective and denied defendant's motion.  Acosta later moved to withdraw based on "irreconcilable differences" with defendant.  The court granted the motion and ordered that a new

attorney be appointed under the Criminal Justice Act. Defendant was subsequently sentenced to 240 months' imprisonment.

## II.

Defendant argues on appeal her right to a fair trial was violated as a result of her trial counsel's ineffective assistance and prosecutorial misconduct during closing arguments. We address the issues in turn, but first highlight a jurisdictional twist to the ineffective assistance of counsel claim.

### Jurisdiction-ineffective assistance of counsel claim

Ineffective assistance of counsel claims generally must be brought in a collateral proceeding rather than on direct appeal. United States v. Gallegos, 108 F.3d 1272, 1279 (10th Cir. 1997). This rule encourages the development of a factual record, thereby illuminating the extent of trial counsel's alleged deficiencies and the possible prejudicial impact to defendant flowing therefrom. Id. at 1280. By allowing such claims to be addressed in the first instance by the district court, which is familiar with the proceedings and has observed counsel's performance firsthand, the rule also facilitates the isolation of relevant issues and heightens the effectiveness of appellate review. See United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). This rule, however, is not absolute. If the factual underpinnings have been adequately developed in the district court, we will entertain ineffective assistance of counsel issues on direct

appeal. United States v. Carter, 130 F.3d 1432, 1442 (10th Cir. 1997).

Defendant attacked the effectiveness of her trial counsel's assistance in her "Motion to Vacate Jury Verdict" nearly six months after the jury had returned its guilty verdicts. Notwithstanding the title of the motion, defendant was requesting a new trial. Because the motion was filed more than seven days after the verdict and no extension had been granted, the court had no jurisdiction to entertain the motion. See United States v. Miller, 869 F.2d 1418, 1420 (10th Cir. 1989) ("The seven-day period for filing a motion for a new trial, based upon any ground other than newly discovered evidence, is a jurisdictional limit on the district court's power to act."). The court, nevertheless, conducted an evidentiary hearing, made factual findings, and denied the motion on the merits.

Ordinarily, the fact that the district court conducted a hearing and invited defendant to offer evidence in support of her theory would suggest the record is sufficient for us to address the ineffective assistance of counsel claim on direct appeal. See United States v. Kramer, 168 F.3d 1196, 1200 n.2 (10th Cir. 1999); Carter, 130 F.3d at 1442. The problem here is that, at the time the court heard defendant's motion, it had no jurisdiction to grant the requested relief. Although neither side raised this issue, we conclude as a preliminary matter that we can rely on the court's findings and evaluate defendant's ineffective assistance of counsel claim on direct appeal.

-6-

It is critical to note we are not reviewing the court's denial of defendant's motion. Rather, we are examining the ineffective assistance of counsel claim as if it were presented to us in the first instance. Our task is to determine if the factual predicates for the claim have been sufficiently developed in the district court. Although the court had no power to grant defendant relief, it had inherent authority to conduct a hearing and make findings on the issue. Indeed, in evaluating such claims in the past, we have relied on factual findings made in conjunction with hearings for which ineffective assistance of counsel represents an inadequate basis for relief. See Carter, 130 F.3d at 1442 (testimony on issue at defendant's sentencing hearing). We conclude we can rely on the district court's findings following the evidentiary hearing inquiring into defendant's ineffective assistance of counsel claims.

**Ineffective assistance of counsel**

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on this claim, defendant must demonstrate (1) counsel's performance was deficient, i.e., it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced defendant's defense, i.e., there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.   Id. at 687-88, 694.

   *Lack of communication.*    Defendant contends Hill failed to adequately communicate with her prior to and during trial.  At the evidentiary hearing on her motion, defendant testified Hill met with her for a total of twenty minutes between the time his representation began and her trial commenced.  This allegation was directly refuted, however, by the testimony of Hill and his investigator.  Hill insisted that prior to trial he spent approximately ten hours in multiple visits with defendant, and that local counsel Thomas Wright met separately with defendant on two other occasions.  The investigator testified he met with defendant for four hours over the course of three visits.  The court found defendant's testimony untrustworthy and concluded Hill and his associates had sufficient communication with defendant prior to trial.   [1]  Such credibility determinations must be treated with great deference and we see no clear error in the court's findings.   See Anderson v. City of Bessemer City    , 470 U.S. 564, 575 (1985) (trial court's decision to credit testimony of one individual over another is "virtually never" clear error).

---

   [1]  We decline to consider defendant's suggestion, raised for the first time at oral argument, that counsel has a duty to maintain time sheets of all time spent with clients.   See United States v. Dewitt   , 946 F.2d 1497, 1499 (10th Cir. 1991) (issues not raised in district court will not be heard on appeal).

*Lack of investigation*. Defendant also contends Hill failed to investigate possible sources of evidence corroborating her testimony. In assessing this matter, we must

> keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. Because that testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies, [the Supreme Court has] noted that counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. But, [the Court has] observed, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Kimmelman v. Morrison, 477 U.S. 365, 384 (1986) (internal quotations and citations omitted). Defendant's claim is plagued by several problems. She was largely uncooperative with Hill and his associates during visits and provided them with little assistance. For example, Hill solicited information as to the whereabouts of Antonio Rodriguez, but defendant stated he was in Mexico and could not be reached. Defendant also failed to give Hill the names of any relatives who could verify her story. She refused to speak to the investigator on his visits to the detention center. Finally, she acknowledged she did not provide Hill and his associates with all pertinent information.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information

> supplied by the defendant. In particular, what investigation decisions
> are reasonable depends critically on such information.

Strickland, 466 U.S. at 691. Defendant cannot deprive her counsel of the tools necessary to carry out a reasonable investigation and later claim prejudice when she is convicted.

Moreover, with the exception of the two matters discussed below, defendant has not identified any exculpatory or impeaching evidence that further investigation would have yielded. To satisfy the prejudice prong of the Strickland test for ineffective assistance of counsel, a defendant must specifically show what beneficial evidence an "adequate" investigation would have produced. Hendricks v. Calderon, 70 F.3d 1032, 1042 (9th Cir. 1995); United States v. Ashimi, 932 F.2d 643, 649 (7th Cir. 1991). Simply speculating that investigation might have resulted in something useful will not suffice.

Defendant suggests the California Department of Motor Vehicles could have supported her suspended license theory, and her father could have verified her travel plans. She maintains Hill's failure to contact the motor vehicle department or her father amounts to ineffective assistance of counsel. We disagree. Other than the self-serving statements of defendant and her father, there is no evidence in the record that defendant's license was in fact suspended at the time she was stopped. Even if her license was suspended, disclosure of that fact to the jury would have had little or no effect on the outcome of the case.

-10-

Defendant's testimony regarding her itinerary was nothing short of bizarre and it would have taken more than a suspended license to convince a reasonable jury that defendant was unaware of the heroin hidden in the engine compartment of her pickup.   See United States v. Prows  , 118 F.3d 686, 693 (10th Cir. 1997) (overwhelming evidence of defendant's guilt rendered attorney's failure to investigate potentially impeaching materials on government witness nonprejudicial).

Defendant's father's proposed testimony was that defendant went to Mexico to "pick up her car." Evidentiary Hearing Tr. at 26-27.  Such testimony would have been consistent with, and could have bolstered, the government's theory that defendant flew to Morelia on January 18, 1997, to retrieve her pickup, which then had heroin hidden inside its engine compartment.  Moreover, as the government correctly notes, nowhere in his proposed testimony does defendant's father indicate defendant invited family members to accompany her to Palomas. Indeed, she would have had no time to extend such invitations inasmuch as she claims to have departed for Palomas immediately upon her purported return to California on January 21.  It is far more likely that, if travel invitations were extended to relatives, defendant did so in conjunction with her initial trip to Morelia on January 18.  Defendant has failed to show how Hill's alleged failure to investigate prejudiced her case.

*Declining to interview government witnesses*. In a closely related argument, defendant maintains Hill failed to adequately prepare for cross-examination of government witnesses by declining to interview them prior to trial. This contention has no merit. Hill testified he had the witnesses' statements and they were all very basic in nature. Further, not only did the witnesses have no obligation to speak with Hill, but tipping them off as to his likely lines of cross-examination would have been counterproductive. Defendant also challenges Hill's failure to discredit government witnesses by emphasizing the frequent employment of innocent "mules" by drug traffickers. We evaluate ineffective assistance of counsel claims from an attorney's perspective *at the time of trial* and not from the vantage point provided by hindsight. Strickland, 466 U.S. at 689. In any event, Hill did elicit testimony regarding drug "mules" from a customs agent and focused on that testimony in closing arguments.

### Prosecutorial misconduct during closing arguments

Defendant argues the prosecutor improperly commented during closing arguments on defendant's failure to call certain witnesses at trial. As defendant did not object to these statements at trial, we review only for plain error. United States v. Herndon, 982 F.2d 1411, 1414-15 (10th Cir. 1992). "Plain error is *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." United States v. Sides, 944 F.2d 1554, 1561

(10th Cir. 1991) (citations and internal quotations omitted).  The plain error

doctrine is to be invoked "only sparingly," United States v. Denogean , 79 F.3d

1010, 1013 (10th Cir. 1996), and only if "the error seriously affect[ed] the

fairness, integrity, or public reputation of judicial proceedings." Johnson v.

United States , 520 U.S. 461, 466-67 (1997).

In closing arguments, the prosecutor opined that defendant's claim she was

nervous at the port of entry because her license was suspended had not been

corroborated with any evidence of the license suspension.  Responding to Hill's

suggestion that the government had presented no evidence of when defendant had

crossed the border into Mexico, the prosecutor further argued defendant could

have subpoenaed relevant records and would have done so if she thought the

information would be beneficial to her.  The prosecutor's arguments were not

improper.  Although a prosecutor may not comment on a defendant's decision to

refrain from testifying, he is otherwise free to comment on the defendant's failure

to call certain witnesses or present certain testimony. [2] United States v. Gomez-

Olivas , 897 F.2d 500, 503 (10th Cir. 1990) .  Moreover, we accord prosecutors

"considerable latitude in responding to defense arguments, commenting on the

---

[2] If the government knows a witness would invoke the Fifth Amendment
privilege if called to testify, the government cannot remark upon the defendant's
failure to call such a witness. United States v. Miller , 460 F.2d 582, 588 (10th
Cir. 1972).  Such a scenario is not present here.

-13-

evidence, and arguing inferences therefrom." <u>Id.</u> Lack of corroboration, in particular, is a permissible inference to argue. <u>Id.</u> Nor did the prosecutor's comments shift the burden of proof. The court clearly instructed the jury that the arguments of counsel are not evidence, that the prosecution bears the burden of proof, and that defendant has no obligation to offer any evidence or prove her innocence. The prosecutor's closing arguments did not deprive defendant of a fair trial.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge