**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 5, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

LONNIE J. FLONNORY,

        Defendant - Appellant.

No. 10-6037

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 5:09-CR-00163-M-1)**

---

Alleen Castellani VanBebber, McDowell, Rice, Smith & Buchanan, P.C., Kansas City, Missouri, for Defendant - Appellant.

Debra W. Paull, Assistant United States Attorney, (Sanford C. Coats, United States Attorney, and Ross N. Lillard, III, Assistant United States Attorney, with her on the brief), Oklahoma City, Oklahoma, for Plaintiff - Appellee.

---

Before **HARTZ**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

After a jury trial in the United States District Court for the Western District of Oklahoma, Defendant Lonnie J. Flonnory was convicted of five counts of obtaining money through false pretenses under the Assimilative Crimes Act, *see*

18 U.S.C. § 13, applying Okla. Stat. tit. 21, § 1541.1 (2002). On appeal he challenges his conviction on one of the counts, arguing that the government failed to prove that he had committed the offense on federal territory and that the district court failed to instruct the jury not to speculate about the location of the offense. He also contends that he must be resentenced because the court miscalculated his offense level under the United States Sentencing Guidelines by using too high a figure for the loss suffered by his victims and by finding that he obstructed justice when he committed perjury at trial. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.     BACKGROUND

Defendant was a civilian employee of the United States Department of Defense at Fort Sill in Oklahoma. Although there was evidence that he had defrauded a number of people, he was charged only with defrauding Dennis Carver, another civilian Department of Defense employee, who worked in the same office as Defendant, about four desks away. In April 2004 Defendant approached Carver about an investment opportunity. They met at the Burger King on Fort Sill, where Defendant told Carver that he had a connection at the local courthouse who could provide tips about foreclosed property that was available for purchase although the public did not yet have notice. Defendant said that he would use the invested money to buy property and soon resell it. He promised Carver a return of 25% on his money in only four months. Carver's

initial investment was a cashier's check for $2,000 on April 7; in return he received a 120-day promissory note for $2,500.

On April 30, Carver gave Defendant another cashier's check for $3,500. In exchange Carver received a second 120-day promissory note, this time for $4,375, again a 25% return. He gave additional cashier's checks to Defendant on May 19 and June 9 for $2,000 each. On June 9 Defendant also gave Carver a new promissory note that covered all four of Carver's cashier's checks. Finally, Carver wrote four personal checks to Defendant before being deployed to Iraq in early July; each check was postdated so that Defendant could cash it while Carver was out of the country. Carver testified that he left the four checks in Defendant's drawer at work. Carver estimated that he had invested about $28,000 with Defendant, and nothing was ever repaid. The five counts on which Defendant was convicted related to the last five checks that Carver gave to Defendant—the June 9 cashier's check and the four personal checks. No charges could be pursued based on the April 7, April 30, and May 19 checks because the five-year limitations period had expired by the time the indictment was filed on May 20, 2009. *See* 18 U.S.C. § 3282(a).

Defendant had not used the money to buy foreclosed property in Oklahoma, but instead had invested it in Nigerian oil contracts in which he was also investing personal funds. Defendant said that he had told Carver and his other investors that they were investing in Nigerian oil contracts; but at trial Carver and

two others (a husband and wife who had invested in February 2004) testified otherwise.

According to the presentence investigation report (PSR), Defendant had defrauded 13 victims out of $194,230. It calculated Defendant's sentencing guideline range as follows: There being no guideline for the state statute, the PSR used the most analogous guideline, § 2B1.1, entitled "Larceny, Embezzlement, and Other Forms of Theft . . . ." *See* USSG § 2X5.1 (2009) ("If the offense is a felony for which no guidelines expressly has been promulgated, apply the most analogous offense guideline."). Under that guideline the base offense level was 6. *See id.* § 2B1.1(a). Because the victims lost $194,230, that level was increased by 10. *See id.* § 2B1.1(b)(1). The PSR also added 2 levels because the scheme involved more than 9 victims, s*ee id.* § 2B1.1(b)(2)(A), and 2 more levels because Defendant had obstructed justice by committing perjury during trial, *see id.* § 3C1.1, resulting in a total offense level of 20. Because Defendant had no criminal-history points, his guideline sentencing range was 33–41 months. The district court agreed with the PSR and sentenced Defendant to 33 months' incarceration.

## II. DISCUSSION

### A. Challenges to Count 2

#### 1. Sufficiency of Evidence

Defendant contends that there was insufficient evidence to convict him on Count 2 because the government failed to prove that Carver delivered the June 9 check to him on the military base. We begin our analysis by describing the law under which Defendant was prosecuted.

The Assimilative Crimes Act states:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a). The referenced "section 7" is 18 U.S.C. § 7, which defines *special maritime and territorial jurisdiction of the United States* to include:

> Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

18 U.S.C. § 7(3). The government and Defendant stipulated that Fort Sill comes within § 7. Fort Sill is in Oklahoma, so Oklahoma law is the law to be assimilated. Oklahoma's false-pretenses statute makes it unlawful for anyone "with intent to cheat and defraud, [to] obtain or attempt to obtain from any person, firm or corporation any money, property or valuable thing, . . . by means or by use of any trick or deception, or false or fraudulent representation or

-5-

statement or pretense . . . ." Okla. Stat. tit. 21, § 1541.1 (2002). Obtaining

money or property worth more than $1,000 through false pretenses is a felony

punishable by up to 10 years in prison. *Id.* § 1541.2.[1]

"We review the sufficiency of the evidence supporting a criminal

conviction de novo" and determine "whether a reasonable jury could find the

defendant guilty beyond a reasonable doubt, if it viewed all direct and

circumstantial evidence, as well as all reasonable inferences drawn from that

---

[1]At trial the district court, without objection, gave the following jury instruction defining the elements of the crime:

To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First:      Defendant obtained from another person money or something of value;
Second:    the money or something of value obtained by defendant was valued at more than $1000.00;
Third:      the money or something of value was obtained by means of a knowing false and fraudulent representation;
Fourth:    with intent to cheat or defraud said person; and
Fifth:       the offense was committed by defendant on a place or lands reserved for the use of the United States and under the exclusive or concurrent jurisdiction of the United States.

You are further instructed that Fort Sill, Oklahoma is a place or land reserved for the use and under the exclusive or concurrent jurisdiction of the United States.

Jury Instruction No. 16, *United States v. Flonnory*, No. 5:09-CR-163-M-1 (W.D. Okla. Sept. 16, 2009), ECF. No. 41.

evidence, in the light most favorable to the Government." *United States v. Bowen*, 527 F.3d 1065, 1075–76 (10th Cir. 2008).[2]

There is no dispute that the government had to prove that the crime charged in Count 2 was committed on Fort Sill. But the parties dispute what elements of the offense had to occur there. Defendant asserts that the Oklahoma false-pretense offense is committed only where the money is delivered to the offender. The government, however, asserts that it is enough if the offender made his false statement on the base. If the question were venue rather than jurisdiction, we might well agree with the government. In the venue context, "there is a general agreement that [false pretenses] has multiple parts and occurs both where the misrepresentation is made and funds obtained." 4 Wayne R. LaFave et al., Criminal Procedure § 16.2(a), at 759–60 (3d ed. 2007); *see U.S. v. Redfearn*, 906 F.2d 352, 354 (8th Cir. 1990) (false statement in obtaining a loan could be prosecuted where loan application was filled out, where loan was approved, or where money was obtained). But under the common law, jurisdiction is limited to the situs of the crime, each crime has only one situs, and the "crime of false pretenses is committed where the property is obtained, not where the false

---

[2] Defendant failed to preserve the issue of sufficiency because he did not renew his motion for judgment of acquittal at the close of the case. *See United States v. Swanson*, 360 F.3d 1155, 1162 (10th Cir. 2004). We therefore review the issue under the plain-error standard; but that standard is usually the same as the harmless-error standard when the issue is sufficiency of the evidence of guilt. *See United States v. Goode*, 483 F.3d 676, 681 n.1 (10th Cir. 2007). In any event, there was no error here.

pretenses are made."  1 Wayne R. LaFave, Substantive Criminal Law § 4.4(a) at 295–96 (2d ed. 2003);  *but see United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001) (applying federal venue statute, 18 U.S.C. §3237(a), to grant federal jurisdiction if offense began, continued, or was completed on military base).  We therefore hesitate to adopt the government's position.  In any event, we need not resolve the issue to decide the matter before us.  The government presented enough evidence at trial for a rational juror to conclude beyond a reasonable doubt that the transfer of the June 9 check occurred on Fort Sill.

Defendant testified that "[t]here was three locations that I normally would meet [Carver]"—Carver's apartment, a service station right outside the apartment, and a convenience store at Cash and 67th Street, none of which were on the base. R., Vol. 3 at 101.  He said specifically that Carver gave him the postdated checks at his apartment.  He does not contest that the jury could have believed Carver's testimony that he put the postdated checks in a drawer in Defendant's desk.  But he contends that the jury could not have found beyond a reasonable doubt that Carver gave him the June 9 check on the base, because Carver could not testify precisely about where the transfer of the check occurred.  Defendant relies in particular on Carver's testimony on cross-examination.  Carver stated that he did not recall exactly where he gave the June 9 check to Defendant, "but it probably was in the office."  *Id.* at 38.  Shortly thereafter, defense counsel asked, "You believe you gave this to him at work, but you really don't know for sure, is that

your testimony?" and Carver responded, "Yes. I can't remember giving it to him anywhere else." *Id.* at 40.

Defendant's argument does not persuade us. Indeed, the quoted cross-examination testimony might well have been enough to support the verdict. But there was more. On direct examination Carver twice said that all his transactions with Defendant occurred on base, and on rebuttal he said that he could not recall giving Defendant the June 9 check anywhere but at their office. He testified that he did not know where Defendant lived; that the only time Defendant had been to his apartment was to get a $200 check in November 2004 after Carver returned from Iraq; and that the only other occasion when he had met Defendant outside the office was at the Burger King when Defendant first described his scheme. Further, there would be every reason to expect the checks to be transferred at the office. After all, the two men sat only about four desks apart and saw each other at work every morning.

### 2. Failure to Give Speculation Instruction

Defendant's second challenge to Count 2 is that the district court did not give the jury a supplemental instruction after it began to deliberate. The issue arose when the jury sent a note to the court asking, "What is the location and hours of the Cit[y] National Bank Branch 1001 For check dated 6/09/2004." *Id.*, Vol. 1 at 23. The court discussed the note with both attorneys and proposed to send a response stating, "You have all of the law and evidence in this case before

-9-

you." *Id.*, Vol. 3 at 121. Defense counsel responded: "If they are trying to establish whether or not this happened on post, that's an element. If they don't know that, I don't know if we need an added instruction, or something, that says you can't speculate." *Id.* at 122. After a relatively brief discussion, during which defense counsel further asserted that it would require speculation for the jury to find that Carver gave Defendant the June 9 check on the base, the court concluded: "Okay. I'll send back the note that I propose." *Id.* at 124. Nothing further was said. Defendant argues on appeal that it was reversible error for the court not to respond to the note with an instruction on speculation.

Generally, "[a] district court's actions in responding to questions from the jury, as well as supplemental instructions given to the jury, are reviewed for abuse of discretion." *Allen v. Minnstar Inc.*, 97 F.3d 1365, 1370 (10th Cir. 1996) (citing *United States v. Mitchell*, 67 F.3d 1248, 1252 (6th Cir. 1995)). The government, however, argues that Defendant's counsel did not object clearly and specifically enough to the district court's proposed response to the jury and that we should therefore review only for plain error. There is substantial merit to the government's argument; but because we decide that the court's response was not an abuse of discretion, we need not decide whether the issue was adequately preserved below.

"It is not error to refuse to give a requested instruction if the same subject matter is adequately covered in the general instructions." *United States v. Miller*,

460 F.2d 582, 588 (10th Cir. 1972). In this case a speculation instruction was not necessary because the jury had already been instructed:

> While you must consider only the evidence in this case, *you are permitted to draw reasonable inferences* from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

Jury Instruction No. 10, *United States v. Flonnory*, No. 5:09-CR-163-M-1 (W.D. Okla. Sept. 16, 2009), ECF. No. 41 (Instruction on "Evidence - Direct and Circumstantial - Inferences") (emphasis added). And the jury had also been told that it could convict only if convinced of guilt beyond a reasonable doubt, defined as "a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case." *Id.* Instruction No. 7 (Instruction on "Presumption of Innocence - Burden of Proof - Reasonable Doubt"). When the court has already told the jurors that they must view the evidence reasonably, it need not restate the proposition by telling them not to draw inferences without reason. *See United States v. Hoffecker*, 530 F.3d 137, 174–75 (3d Cir. 2008) (district court need not give defendant's proposed instruction on "'conjecture and speculation'" because it gave an approved reasonable-doubt instruction); *United States v. Dreamer*, 88 F.3d 655, 658–59 (8th Cir. 1996) (no need to use defendant's proposed instruction on circumstantial evidence when reasonable-doubt instruction and others "removed any threat of speculation or conjecture by the jury").

-11-

Because there was sufficient evidence that Carver gave Defendant the June 9 check on Fort Sill, and because the district court did not abuse its discretion in refusing to give the jury an additional instruction on speculation, we affirm Defendant's conviction on Count 2.

**B.      Challenges to Sentence**

On appeal Defendant raises two challenges to his sentence: that the district court miscalculated the loss suffered by victims of his scheme and that it should not have enhanced his offense level for obstruction of justice. "[W]e review a district court's sentencing procedures for abuse of discretion, evaluating factual findings for clear error and legal determinations de novo." *United States v. Mendoza*, 543 F.3d 1186, 1190 (10th Cir. 2008). The facts necessary to calculate the guidelines sentencing range must be proved by a preponderance of the evidence, although the district court can rely on assertions in the PSR if neither party objects. *See United States v. Ary*, 518 F.3d 775, 787 (10th Cir. 2008).

**1.      Calculation of Amount of Loss**

Under Guideline § 2B1.1, the offense level of a theft crime is increased if the loss exceeded $5,000. *See* USSG § 2B1.1(b)(1). The base offense level of 6 is increased by 2 if the loss is between $5,000 and $10,000, by 4 if the loss is between $10,000 and $30,000, and so on. *See id.* Significant for this appeal, if the loss is more than $120,000 but does not exceed $200,000, the base level is increased by 10. *See id.* In calculating the amount of loss, the guidelines look

not only to the charged conduct but to all relevant conduct by the defendant. *See id.* §§ 1B1.2(b), 1B1.3. For offenses under § 2B1.1, relevant conduct includes all acts in the same course of conduct or common scheme or plan. *See id.* § 1B1.3(a)(2) (if offense is one for which grouping of multiple counts is required by 3D1.2(d), consider all acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction"); *id.* § 3D1.2(d) (§ 2B1.1 offenses are subject to grouping); *United States v. Williams*, 292 F.3d 681, 685–86 (10th Cir. 2002) (for crimes "subject to grouping under § 3D1.2(d), the Guidelines instruct the district court to consider relevant conduct that was part of the same course of conduct or common scheme or plan as the offense of conviction." (internal quotation marks omitted)). "Offenses may qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *United States v. Caldwell*, 585 F.3d 1347, 1350 (10th Cir. 2009) (internal quotation marks omitted).

The PSR calculated Defendant's offense level by totaling the losses of 12 victims of his investment scheme. The loss of $194,230 included $50,000 lost by Arthur Johnson and $25,000 lost by Pamela Williams. Defendant's sole challenge to the calculation is that it includes money that Mr. Johnson and Ms. Williams loaned to him in transactions unrelated to the fraudulent scheme. There is some evidence to support this challenge. Johnson testified at trial that he made a

personal loan to Defendant of $18,000 unrelated to real estate. But he also testified that he invested $60,000 to $70,000 with Defendant because Defendant told him that he had a contact inside the Comanche County Courthouse who would give tips regarding recently foreclosed real estate. Johnson said that he never got any of that money back, and Defendant himself testified that he never bought any foreclosed property in Comanche County. The district court can properly consider trial testimony for sentencing purposes. *See United States v. Rowen*, 73 F.3d 1061, 1062–1064 (10th Cir. 1996). Even if we exclude the $25,000 loss attributed by the PSR to Williams and, distorting Johnson's testimony, assume that his $60,000 figure (the lower end of his estimate) included the $18,000 loan unrelated to real estate, the total loss would be $161,230. That loss still exceeds $120,000 and would result in the same offense level as the loss calculated by the district court. Therefore, any error in the calculation was harmless. *See United States v. Wilken*, 498 F.3d 1160, 1170 (10th Cir. 2007) (errors in sentencing calculations are harmless if they do not affect the guidelines range).

Defendant also argues that he was entitled to an evidentiary hearing on the loss calculation. We find the argument puzzling. The district court heard testimony at the sentencing hearing, there is no reason to believe that Defendant would have been denied the opportunity to put on witnesses had he wished to, and

defendant did not object below to the absence of an evidentiary hearing.  We
therefore reject this argument.

### 2.       Enhancement for Obstruction of Justice

Finally, Defendant complains that the district court should not have
imposed a two-level enhancement to his offense level for obstruction of justice.
The court found that Defendant had testified falsely at trial concerning what his
investors knew and that this falsity constituted obstruction of justice.

The guidelines state:

> If (A) the defendant willfully obstructed or impeded, or attempted to
> obstruct or impede, the administration of justice with respect to the
> investigation, prosecution, or sentencing of the instant offense of
> conviction, and (B) the obstructive conduct related to (i) the
> defendant's offense of conviction and any relevant conduct; or (ii) a
> closely related offense, increase the offense level by **2** levels.

USSG § 3C1.1.  "[C]ommitting, suborning, or attempting to suborn perjury"
qualifies for the offense-level adjustment.  *Id.* § 3C1.1 cmt. n.4(b).

Perjury occurs when "[a] witness testifying under oath or affirmation . . .
gives false testimony concerning a material matter with the willful intent to
provide false testimony, rather than as a result of confusion, mistake, or faulty
memory."  *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).  In the guidelines
context, "if a defendant objects to a sentence enhancement resulting from her trial
testimony, a district court must review the evidence and make independent
findings necessary to establish a willful impediment to or obstruction of justice,

-15-

or an attempt to do the same, under [that] perjury definition . . . ." *Id.* at 95. It is preferable that each element of perjury be set forth "in a separate and clear finding," but it is sufficient if "the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.*

This circuit further requires that the district court be explicit about which representations by the defendant constituted perjury. *See United States v. Hawthorne*, 316 F.3d 1140, 1146 (10th Cir. 2003). The court need not recite the false statements verbatim, but must "generally identify the testimony at issue so that when we review the transcript we can evaluate the *Dunnigan* findings of the elements of perjury against an identified line of questions and answers without having simply to speculate on what the district court might have believed was the perjurious testimony." *Id.* (ellipses and internal quotation marks omitted).

Defendant challenges both the sufficiency of the evidence that he committed perjury and the adequacy of the district court's findings. We hold that he has not established any reversible error. We first address sufficiency of the evidence and then the court's findings.

Defendant testified at trial that his investors knew that their money was going to Nigeria to be invested in oil contracts. But three of his victims—Carver, James Duckett, and Rose Duckett—testified that he had only told them about a local real-estate investment. In addition, an FBI agent who had interviewed

-16-

Defendant testified at trial that he had admitted that he had come up with the real-estate-investment scheme so that he could get more money for the oil investments and that he had lied to investors about having a contact in the courthouse. But Defendant's trial testimony was that he did not use the real-estate pitch to raise money for the oil scheme and that he could not recall telling the FBI agent that he had lied to investors about a courthouse contact. These conflicts in testimony would support a finding of perjury. The sentencing judge, who had presided at trial and could observe the demeanor of the witnesses, could reasonably infer that Defendant's testimony was false, that Defendant knew it was false, and that the testimony was material to the prosecution. *See United States v. Mounkes*, 204 F.3d 1024, 1030 (10th Cir. 2000) (deferring to trial judge regarding finding of perjury).

There is greater merit to the argument that the district court failed to make the specific findings required by *Dunnigan* and *Hawthorne*. But Defendant did not raise the issue below, and nothing in the record suggests that the district court prevented him from raising it. Therefore we review only for plain error; to obtain relief Defendant must establish "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Uscanga-Mora*, 562 F.3d 1289, 1295 (10th Cir. 2009). Defendant fails on the third prong. He has not established that he was prejudiced by any inadequacy in the district court's

-17-

explanation for its imposition of the obstruction-of-justice enhancement. On the contrary, in light of the clear evidence of perjury, it would be surprising if his sentence would be any different if we reversed and remanded for resentencing. *See id.*; *United States v. Aptt*, 354 F.3d 1269, 1287 (10th Cir. 2004) (remand for resentencing on plain-error review was not justified despite trial court's failure to find specifically who defendant supervised, because "[h]ad [defendant] timely objected to the alleged flaw in the district court's reasoning, the district court easily could have named specific participants in the fraud and money laundering that [defendant] supervised").

## VI.  CONCLUSION

We AFFIRM the judgment of the district court.