**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 5, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

RAYMOND L. ROGERS,

  Defendant-Appellant.

No. 12-3125

(D.C. No. 6:10-CR-10186-JTM-1)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

---

  A jury convicted Defendant Raymond Rogers of robbing a federally-insured bank in violation of 18 U.S.C. § 2113(a) (Count I); brandishing a firearm during the robbery in violation of 18 U.S.C. § 924(c)(1)(A) (Count II); and possessing a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1) (Count III). The district court sentenced him to 234 months imprisonment. On appeal, Defendant challenges both his convictions and sentence. Defendant argues the district court improperly (1) denied his motion for judgment of acquittal pursuant to Fed. R. Crim P. 29, (2) enhanced his base offense level under U.S.S.G. § 2B3.1(b)(4)(B), and (3) denied his right to allocution in violation of Fed. R. Crim. P. 32(i)(4)(A)(ii). Our

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We reject each of Defendant's arguments, and affirm.

I.

The Government's evidence as reflected in the record established that on the morning of December 1, 2010, three black males entered a branch of the Equity Bank in Wichita, Kansas. The branch manager and a teller, both women, were inside the bank. All three men wore masks and gloves. Two of the men brandished handguns; the third man carried a white bag. The first armed man covered the lobby area and provided lookout while periodically pointing his gun at the women. The other two men jumped the counter and ordered the women to "get down on the ground." After emptying the teller drawers, the two men instructed the women to open the vault. The second armed man yelled, "If you don't open it, I'll shoot you. Don't make me shoot you." The branch manager testified she thought she was going to be shot. The security video showed that after the vault was opened, the manager crouched in the corner outside the vault:

> I just wanted to get as small as possible, . . . I didn't know what to do so I was thinking, what am I supposed to do now, but I wanted to get as small as possible because I was kind of worried that they were going to shoot me on the way out because, you know, even though . . . they're covered up, . . . you never know if they're thinking, oh, she saw me or something, I don't know. I was worried they were going to shoot me on the way out.

The three men fled in a green Chevy Tahoe that had been reported stolen earlier that morning. A few moments after the robbery, a motorist in the vicinity of

the robbery reported red smoke coming from the Tahoe.  Among the $102,743 stolen from the bank were bait money and dye-packs.  A dye-pack is a bundle of what looks like money, but inside the bundle is a combustible canister of tear gas and red dye.  Bait money is marked bills traceable to a specific bank.  The responding officer found the Tahoe abandoned but saw a "large sum of money stained in red dye laying on the floor board."

Meanwhile, other officers were pursuing a blue Ford Escape that had been reported stolen at around the same time and from the same neighborhood as the Tahoe.  The Escape neared an apartment complex about fourteen blocks from where the Tahoe had been abandoned.  With the Escape still moving, three black men exited the vehicle and fled on foot.  The two men who had jumped out of the passenger side of the vehicle ran toward building 12 of the complex.  The driver fled in a different direction and was the first to be apprehended.  Officers entered building 12 to search for the remaining two suspects.  Officers apprehended the second man after they heard screaming coming from apartment 1211.  At this point, the third man still remained at large.  That man pounded on the door of apartment 1217 and entered uninvited when the tenant answered.  According to the tenant, the man "looked like he had been running. He was sweaty."  Officers proceeded to clear the apartments in building 12.  In the process of removing five individuals from apartment 1217, an officer "saw a black male stick his head out from the . . . southwest bedroom into the hallway and look real quick and then go back . . . into

3

the bedroom." Officers handcuffed that man, identified as Defendant.

Defendant wore a white t-shirt stained with red dye near its midsection. Forensics found the dye on Defendant's t-shirt to be consistent with the dye contained in a dye-pack. A search of apartment 1217 uncovered $62,300 wrapped in two bags in the bathroom's toilet tank. Some of the bills were stained with red dye. Some of the bills were bait money from Equity Bank. Inside the Chevy Tahoe investigators found a dye-stained bag, envelopes from Equity Bank, and several thousand dollars in dye-stained bills, including bait money and some specially marked $2 bills the branch manager had intended to give her children. Inside the Ford Escape investigators located numerous items of evidence linking the three men to the robbery including items of clothing, a wool cap with holes cut in it, and two loaded semiautomatic handguns—an Intratec AB–10 and a Bersa.

## II.

Defendant first claims the evidence was insufficient to support his convictions because no one directly identified him as a participant in the bank robbery (perhaps because he was wearing a mask).[1] Our review of the denial of a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29 is de novo. See United States v. Vigil, 523 F.3d 1258, 1262 (10th Cir. 2008). Viewing the evidence in the light most favorable to the Government, we ask whether "any rational trier of fact could have

---

[1] Notably, Defendant does not challenge his brandishing a firearm and felon in possession convictions apart from his bank robbery conviction. Because Defendant's robbery conviction stands, so do his other two convictions.

4

found the essential elements of the crime beyond a reasonable doubt. In so doing, we do not weigh evidence or credibility; we ask only whether the Government's evidence, credited as true, suffices to establish the elements of the crime." United States v. Hutchinson, 573 F.3d 1011, 1033 (10th Cir. 2009) (internal citation omitted). Applying this standard to the record facts, we need not belabor the point. Suffice to say the Government presented ample evidence to support the jury's finding that Defendant was one of the three men who robbed Equity Bank.

Defendant next asserts the district court erred when it applied a two-point sentencing enhancement pursuant to U.S.S.G. § 2B3.1(b)(4)(B) to increase his base offense level. Subsection (b)(4)(B) directs the court to increase a defendant's base offense level by two points "if any person was physically restrained to facilitate the commission of the offense." When determining the propriety of a sentence enhancement, we review the district court's factual findings for clear error and legal conclusions de novo. See United States v. Miera, 539 F.3d 1232, 1234 (10th Cir. 2008). The Government bears the burden of establishing facts to support an enhancement by a preponderance of the evidence. See United States v. Flonnory, 630 F.3d 1280, 1285–86 (10th Cir. 2011).

The enhancement for physical restraint is applicable when a defendant uses force, including force by gun point, to impede others from interfering with commission of the offense. See Miera 539 F.3d at 1234. Again, we need not tarry. In this case, the district court properly found the evidence of the actual robbery

5

supported application of the two-point enhancement because Defendant and his accomplices threatened the branch manager and the teller with handguns to facilitate the crime.[2]

Lastly, Defendant argues the district court denied him his right to allocution. Because the parties agree Defendant did not object in the district court, we review only for plain error pursuant to Fed. R. Crim P. 52(b). See United States v. Mendoza-Lopez, 669 F.3d 1148, 1150–51 (10th Cir. 2012). Before imposing sentence, the court "must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). "[A] defendant's right of allocution is violated if a district court indicates it is unwilling to listen to the statements or information a defendant wishes to offer in *mitigation* of his sentence." Mendoza-Lopez, 669 F.3d at 1151 (emphasis added).

The district court announced its proposed sentence and then asked Defendant "is there anything that you would like to say on your own behalf?" Defendant

---

[2] The § 2B3.1(b)(4)(B) enhancement was appropriate regardless of which of the three roles Defendant played in the robbery. Guideline § 1B1.3(a)(1)(A) explains that a defendant is accountable at sentencing for "all acts and omissions committed, *aided*, *abetted*, counseled, commanded, induced, procured, or willfully caused by the defendant." (emphasis added). Each count of the indictment charged Defendant under 18 U.S.C. § 2, the aiding and abetting statute, as well as the substantive statute. Additionally, under § 1B1.3(a)(1)(B), a defendant is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction."

responded:

> Your Honor, . . . I've been convicted of these crimes and, you know, I apologize for . . . what's been done that's got us here in court today, but I don't think that a high end of a sentence like that is appropriate for me at this age that I am and, you know, given the fact that I got three kids and a wife, I mean, a low end would be justifiable for me, if you ask my consideration about anything. I mean, I didn't plan on getting 230 some months, that's like a lot of time to a person. But I guess it's really not too much I can say within the matter.

When Defendant had concluded, the court thanked him and then explained in detail why its proposed sentence was the appropriate sentence. Defendant interjected and the following exchange took place:

| | |
|---|---|
| THE DEFENDANT: | Can I ask you a question, Your Honor? |
| THE COURT: | Sure. |
| THE DEFENDANT: | I mean, no one really ever said that I was exactly robbed the bank or anything, but– |
| THE COURT: | Mr. Rogers, if you are trying to tell me now– |
| THE DEFENDANT; | No, I'm not saying– |
| THE COURT: | No, no, what you are trying to tell me now is that nobody said that you were one of the people in the bank. Well, the fact is they did say that. There was testimony at your trial about that, and a jury found even as an aider and abetter that you are every bit as responsible as a principal if you weren't a principal. And let me tell you something else, Mr. Rogers. If you try to excuse or diminish in any way, again, in hearing your involvement, your role in this, I'm going to look for a way to enhance your sentence even further. Do you understand that? |
| THE DEFENDANT: | Yes sir. |
| THE COURT: | All right. Were you about to tell me that you were not as important a part of this as the other people? Is that what you want to tell me? |

7

| | |
|---|---|
| THE DEFENDANT: | No, I was just trying to say that I didn't get a straight testimony of anybody pointing me out that said I did anything, that's all. |
| THE COURT: | The jury found beyond a reasonable doubt that you were a bank robber. |
| THE DEFENDANT: | I understand that. |
| THE COURT: | And that's all we need to know. That's all we need to know. |

Defendant says the foregoing exchange impeded his allocution. We think not. First, after apparently completing his allocution, Defendant decided he wanted to point out to the district court that no direct evidence identified him as one of the three robbers. And he did so. As the foregoing exchange indicates, the district court eventually heard Defendant out. Second, given the overwhelming evidence of his guilt, Defendant's roundabout attempt to undermine the jury's verdict based on the fact he wore a mask during the robbery to escape eyewitness identification is hardly mitigating evidence appropriate for allocution. Third, Defendant fails to provide us any objective basis to suggest the district court would have granted a lower sentence absent its obvious frustration with Defendant's point. See Mendoza-Lopez, 669 F.3d at 1154. At the very least, a miscarriage of justice amounting to plain error cannot be said to have occurred.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge