**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 21, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MAURICIO AREVALO-MAGANA, a/k/a
Wicho, a/k/a Wecho, a/k/a Armando
Magana, a/k/a Armando Murgas, a/k/a
Wicho Murgas,

    Defendant - Appellant.

No. 16-5121
(D.C. No. 4:16-CR-00006-GKF-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

Mauricio Arevalo-Magana pled guilty to being an unlawful alien in possession

of firearms and ammunition. *See* 18 U.S.C. §§ 922(g)(5)(A), 924(a)(2). He now

appeals his 33-month sentence, claiming the district court assigned an incorrect base

offense level without sufficient or reliable evidence. Exercising jurisdiction under

18 U.S.C. § 3742 and 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I.  BACKGROUND

During an investigation of Tim Sumner for stealing 47 firearms from an Oklahoma home, undercover agents with the Bureau of Alcohol, Tobacco, and Firearms (ATF) attempted to purchase the weapons from him.  Police eventually seized 42 of the 47 firearms.  Mr. Sumner said he sold the remaining guns—including a Bushmaster .223 caliber semiautomatic rifle and a Rock River Arms .223 caliber rifle—to Mr. Arevalo-Magana in exchange for marijuana and $500.[1]  The two rifles and three other firearms were never recovered.

Through their investigation, ATF agents learned that Mr. Arevalo-Magana stayed in the apartment of Remi Carrillo.  Mr. Carrillo told an unnamed ATF agent that Mr. Arevalo-Magana showed him photos of "AR-15 type rifles" that he had purchased.  R. at 28.  He said Mr. Arevalo-Magana disposed of the firearms after learning that Mr. Sumner had told the police he had sold the firearms to Mr. Arevalo-Magana.

A grand jury indicted Mr. Arevalo-Magana on three counts:  (1) being an unlawful alien in possession of firearms and ammunition, including the Bushmaster and Rock River Arms rifles, 18 U.S.C. §§ 922(g)(5)(A), 924(a)(2); (2) possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(D); and (3) possession of firearms in furtherance of a drug trafficking crime, 18 U.S.C.

---

[1] Mr. Sumner said he sold the weapons to an individual named "Wicho," Supp. R., Vol. II at 14, which is one of Mr. Arevalo-Magana's aliases.

§ 924(c)(1)(A)(i). He pled guilty to count one in exchange for dismissal of counts two and three. He preserved his right to appeal any contested sentencing issue.

Under the plea agreement, the parties stipulated for sentencing purposes that the anticipated base offense level would be 20 under the U.S. Sentencing Guidelines Manual § 2K2.1(a)(4)(B) (U.S. Sentencing Comm'n 2015). That provision applies if the offense involved a semiautomatic firearm capable of accepting a large-capacity magazine.[2] Mr. Arevalo-Magana admitted to possessing the firearms charged in count one of the indictment, including the Bushmaster and the Rock River Arms rifles.

The presentence investigation report (PSR) did not apply § 2K2.1(a)(4)(B). Instead, the PSR assigned a lower base offense level of 14 under USSG § 2K2.1(a)(6), without regard to whether the offense involved a semiautomatic firearm capable of accepting large-capacity magazines. The government objected, arguing that the Bushmaster and Rock River Arms rifles were semiautomatic firearms capable of accepting large-capacity magazines. The government claimed that when ATF agents attempted to purchase the firearms from Mr. Sumner, he sent them photos depicting the rifles with large-capacity magazines attached. The government also asserted the burglary victim told ATF Agent Carlos Sandoval he had 20- and 30-round magazines for these rifles.

---

[2] Section 2K2.1(a)(4)(B) also requires the defendant to be a "prohibited person." Mr. Arevalo-Magana does not dispute his status as a prohibited person.

At sentencing, the parties stipulated that the rifles were stolen in new condition, in their original boxes, with large-capacity magazines. *See* Supp. R., Vol. II at 11-12, 21-22. Also, the government called ATF Agent Lucas Keck. He testified that he had conducted a phone interview of Mr. Sumner, who said the "AR-style rifles" "were brand new . . . in the factory-style boxes[] when he [] received them and sold them" to Mr. Arevalo-Magana. *Id.* at 15. He told Agent Keck the magazines "were in the original boxes with the rifles" and, although he was unfamiliar with the magazines, he knew "they were the same ones that came from the factory." *Id.* Agent Keck added that the factory magazines "would have been 20- or 30-round magazines." *Id.* at 21.

The district court sustained the government's objection, ruling there was sufficient evidence to find that Mr. Arevalo-Magana possessed semiautomatic rifles with large-capacity magazines in close proximity. The court therefore applied the base offense level of 20 under § 2K2.1(a)(4)(B). It added 2 levels for the number of guns involved, another 2 because they were stolen, and 4 more because they were possessed in connection with another felony (the drug offense), yielding an offense level of 28. The court then reduced the offense level by 3 because Mr. Arevalo-Magana accepted responsibility, and granted a 6-level stipulated variance, resulting in a final offense level of 19. Accounting for his category-I criminal history, the court determined the applicable sentencing guideline range was 30 to 37 months. It sentenced Mr. Arevalo-Magana to 33 months in prison.

Now on appeal, Mr. Arevalo-Magana contends there was insufficient evidence to support the higher base offense level under § 2K2.1(a)(4)(B) because the rifles were never recovered. He also contends the government's evidence at sentencing was unreliable and could not sustain the greater base offense level.

## II. DISCUSSION

"Our appellate review of a defendant's sentence includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *United States v. Saavedra*, 523 F.3d 1287, 1289 (10th Cir. 2008) (internal quotation marks omitted). Mr. Arevalo-Magana contends the district court lacked sufficient or reliable evidence that he possessed the rifles with large-capacity magazines to impose a greater base offense level under § 2K2.1(a)(4)(B). "This is a proper procedural argument because it challenges the district court's method of fact-finding on a fact that it used to increase [his] sentence." *United States v. Lente*, 647 F.3d 1021, 1031 (10th Cir. 2011).

We examine such procedural challenges for an "abuse of discretion, under which we review de novo the district court's legal conclusions regarding the [G]uidelines and review its factual findings for clear error." *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012). The government bears the burden to prove by a preponderance of the evidence that the offense involved a semiautomatic firearm capable of accepting a large-capacity magazine. *See United States v. Flonnory*, 630 F.3d 1280, 1285-86 (10th Cir. 2011) ("The facts necessary to calculate the

guidelines sentencing range must be proved by a preponderance of the evidence . . . ."); *United States v. Rutter*, 897 F.2d 1558, 1560 (10th Cir. 1990) ("[T]he quantum of proof required for factual determinations under the Sentencing Guidelines is a preponderance of the evidence and the burden of proof generally is allocated to the government for sentence increases and to the defendant for sentence decreases.").

Under § 2K2.1(a)(4)(B), the applicable base offense level is 20 if the "offense involved a [] semiautomatic firearm that is capable of accepting a large capacity magazine." The commentary notes of § 2K2.1 define a "semiautomatic firearm that is capable of accepting a large capacity magazine" as:

> a semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm.

USSG § 2K2.1 cmt. n.2.

It is undisputed that the Bushmaster and Rock River Arms rifles are capable of accepting large-capacity magazines that hold more than 15 rounds. The question is whether large-capacity magazines were attached to or within close proximity of the rifles at the time of the offense. On this score, there was ample evidence that Mr. Sumner sold the rifles to Mr. Arevalo-Magana with the original, large-capacity magazines from the manufacturer. The parties stipulated that the rifles were stolen new, in their original boxes, which contained large-capacity magazines. Mr. Sumner

confirmed to Agent Keck that he sold the rifles to Mr. Arevalo-Magana with the magazines. Mr. Arevalo-Magana admitted to possessing the rifles. And although Mr. Sumner was unfamiliar with the capacity of the magazines, he knew they were the factory magazines, which Agent Keck testified were capable of holding 20 or 30 rounds. Presented with this evidence, the district court did not clearly err in finding that Mr. Arevalo-Magana possessed the semiautomatic rifles with large-capacity magazines in close proximity.

Mr. Arevalo-Magana contends, however, that Agent Keck's testimony was unreliable. He points out that Mr. Sumner was not present at the sentencing hearing and Agent Keck merely relayed his recollection of their phone interview. But hearsay statements may be considered at sentencing so long as they bear sufficient indicia of reliability. *See United States v. Martinez*, 824 F.3d 1256, 1260 n.5 (10th Cir. 2016); *United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013); *see also* USSG § 6A1.3(a) ("[T]he court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

When hearsay is introduced at a sentencing hearing, "[c]orroborating evidence is often key to determining whether a statement is sufficiently reliable." *Ruby*, 706 F.3d at 1229. For example, in *Martinez*, we concluded the district court did not clearly err in considering multi-layered hearsay statements that were supported by corroborating evidence. 824 F.3d at 1263. The court there found that the defendant

possessed a firearm in connection with another felony for purposes of applying a four-level enhancement under USSG § 2K2.1(b)(6)(B). *Id.* at 1259-60. That finding was based in part on the co-defendant's incriminating statements to police, which were memorialized in written police reports indicating that the defendant obtained the firearm during a burglary they jointly committed. *Id.* at 1258, 1260-61. These statements were admitted at sentencing through an ATF agent who had neither spoken to the co-defendant nor been present during the co-defendant's interviews with police. *Id.* at 1260. We affirmed the enhancement because corroborating evidence tended to confirm the accuracy of the co-defendant's statements, *id.* at 1263;[3] *see also United States v. Roach*, 978 F.2d 573, 575-76 (10th Cir. 1992) (affirming enhancement based on ATF agent's hearsay sentencing testimony that was corroborated by other evidence).

Here, too, corroborating evidence supported the veracity of Mr. Sumner's statements. Mr. Sumner said the rifles were brand new, in the original boxes, with the factory magazines, when he sold them to Mr. Arevalo-Magana. Mr. Arevalo-Magana admitted to possessing the rifles, and the parties stipulated that they were stolen in new condition, with the large-capacity magazines. The burglary victim told ATF Agent Sandoval that he had large-capacity magazines for these rifles when they

---

[3] The corroborating evidence was that the co-defendant knew the defendant would have at least one firearm from the burglary, the defendant possessed the stolen firearm nine days after the burglary, the defendant suspiciously stated he obtained the firearm "in a field from an unknown white guy" long before the firearm was actually stolen, and the defendant had a lengthy record of theft offenses. *Martinez*, 824 F.3d at 1262 (internal quotation marks omitted).

were stolen, and Agent Keck testified without objection that the original factory magazines would have held 20 or 30 rounds. This information refutes any suggestion that the magazines had a lower capacity.

Moreover, Mr. Sumner sent a photo to undercover ATF agents, which was admitted at sentencing, depicting the rifles with their large-capacity magazines attached, and Mr. Carrillo told an ATF agent that Mr. Arevalo-Magana showed him a photo of AR-15-type rifles he had purchased. Although Mr. Arevalo-Magana notes that Mr. Sumner merely "*believed* the weapons . . . had the original magazines with them," Supp. R., Vol. II at 16 (emphasis added), Mr. Arevalo-Magana stipulated that the rifles were stolen with large-capacity magazines in the original boxes.

The evidence corroborates Mr. Sumner's statements and provides sufficient indicia of reliability as to their veracity. The district court therefore did not clearly err in considering this evidence and finding that Mr. Arevalo-Magana possessed semiautomatic rifles with large-capacity magazines in close proximity.

## III. **CONCLUSION**

The judgment of the district court is affirmed.

ENTERED FOR THE COURT,

Scott M. Matheson, Jr.
Circuit Judge