FILED
United States Court of Appeals
Tenth Circuit

August 15, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

FRANCISCO ARMANDO MARTINEZ,

    Defendant - Appellant.

No. 21-2100
(D.C. No. 2:18-CR-02315-KG-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HARTZ**, **KELLY**, and **HOLMES**, Circuit Judges.

_____

Francisco Armando Martinez appeals from his conviction for transporting illegal aliens, arguing that the district court incorrectly instructed the jury. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

According to the testimony at trial, in April 2018, a group of noncitizens, with a guide, crossed the border illegally and walked miles into the United States. When

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

they reached New Mexico Highway 9, the guide told them that cars would come to pick them up.  The group waited, hiding behind the berm beside the road, for more than two days.  Then Mr. Martinez pulled up in a Chevrolet Monte Carlo, a two-door sedan.  The guide said that the noncitizens should get ready to leave, stating, "[l]ook, your ride's here."  R. at 125 (internal quotation marks omitted).  The noncitizens emerged from hiding and crossed over a barbed-wire fence.  While they were approaching, Mr. Martinez opened the door and told them in Spanish something to the effect of, "[g]et in, be quiet, . . . and we'll go."  *Id.* at 128 (internal quotation marks omitted).  The car held five noncitizens, one in the front passenger seat and four in the rear seat.

Rather than asking his passengers where they wanted to go, Mr. Martinez told them they were going to meet another car in Phoenix.  He turned north on New Mexico Highway 113, a twenty-mile, two-lane road connecting Highway 9 and Interstate 10.  About halfway along Highway 113, the car crossed paths with a marked Border Patrol truck driving south.  Mr. Martinez told his passengers, again in Spanish, "[d]on't worry, don't be afraid, nothing's going to happen."  *Id.* at 130 (internal quotation marks omitted).

Seeing that Mr. Martinez's car was unusually crowded, the Border Patrol agents made a U-turn and started following it north.  They kept the car in sight while Mr. Martinez was on Highway 113 and then while he drove west on Interstate 10 for about ten miles until he stopped at a gas station with a convenience store.  Mr. Martinez parked at a gas pump, told his passengers to wait in the car while he got

some gas, and walked a few steps toward the store. He turned back when the Border Patrol agents pulled in behind his car.

One agent asked Mr. Martinez if he was a United States citizen, and he responded affirmatively. The agent then asked if the passengers were Mr. Martinez's family. He said, "no, that he didn't know them," *id.* at 233, that "he was just giving them a ride, " *id.* at 235, and "that they flagged him down," *id.* at 242. The other agent asked Mr. Martinez if he could speak to the passengers, so Mr. Martinez opened his door and rolled down the passenger-side window. After the agent ascertained that the passengers were noncitizens, without papers to be in the United States legally, the agents arrested Mr. Martinez and the passengers.

The government charged Mr. Martinez with one count of conspiracy to transport illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), and one count of transporting illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (a)(1)(B)(ii), and (a)(1)(A)(v)(II). Mr. Martinez went to trial before a jury. As relevant to this appeal, he requested that the district court give certain jury instructions regarding the burden of proof and inferences from circumstantial evidence. But the court refused the requested instructions.

The jury found Mr. Martinez guilty of transporting illegal aliens but not guilty of conspiracy. The district court sentenced him to the lesser of 24 days of imprisonment or time served and one year of supervised release. Mr. Martinez now appeals.

3

## DISCUSSION

Mr. Martinez challenges the district court's refusal to give his requested instructions regarding the burden of proof and inferences to be drawn from circumstantial evidence. "We review the District Court's refusal to give requested instructions for abuse of discretion." *United States v. Moran*, 503 F.3d 1135, 1146 (10th Cir. 2007). "To assess whether the court properly exercised its discretion, we review the jury instructions de novo to determine whether, as a whole, they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *Id.* (internal quotation marks omitted). "We reverse only if prejudice results from a court's refusal to give a requested instruction." *United States v. Faust*, 795 F.3d 1243, 1251 (10th Cir. 2015) (internal quotation marks omitted).

## I.    Burden of Proof

First, Mr. Martinez challenges Instruction 2, regarding the burden of proof. He argues that the district court erred in declining to define "reasonable doubt" as "the 'kind of doubt that would make a person hesitate to act.'" Aplt. Opening Br. at 8 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)).

"[T]he Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). "[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the

4

government's burden of proof." *Id.* (citation omitted); *see also United States v. Clifton*, 406 F.3d 1173, 1177 (10th Cir. 2005) ("A district court . . . retains considerable latitude in instructing juries on reasonable doubt, and fulfills its constitutional duty if the charge as a whole correctly conveys the concept of reasonable doubt." (brackets, citation, and internal quotation marks omitted)).

Here, the district court did not abuse its discretion in rejecting Mr. Martinez's requested instruction. Instruction 2 stated:

> The United States has the burden of proving the Defendant guilty beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. A defendant has an absolute right not to testify and may not be compelled to testify. No inference of any kind should be drawn from the election of a defendant not to testify, and that fact should not be considered by you in any way or even discussed in your deliberation. The United States has the burden of proving the Defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the Defendant not guilty.

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the Defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the United States' proof exclude any "reasonable doubt" concerning the Defendant's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the Defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

R. at 43. The instruction both adequately directed the jury that it was required to apply the reasonable-doubt standard and adequately defined the concept of reasonable doubt.

In reviewing an instruction containing similar language, we stated, "[t]he court's instruction correctly described the persuasion by which the prosecution must convince the trier of all the essential elements of guilt." *Clifton*, 406 F.3d at 1178 (internal quotation marks omitted). We further stated, "the instruction correctly explained that the Government need not prove Defendant's guilt beyond all possible doubt," and that it "then, again correctly, defined reasonable doubt as a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case." *Id.* (internal quotation marks omitted). "The district court's instruction, therefore, correctly conveyed the concept of reasonable doubt to the jury." *Id.* (internal quotation marks omitted). The same is true here.

Further, in *United States v. Petty*, we held that "the 'firmly convinced' language, juxtaposed with the insistence that a jury must acquit in the presence of 'a real possibility' that the defendant is not guilty, is a correct and comprehensible statement of the reasonable doubt standard." 856 F.3d 1306, 1310 (10th Cir. 2017) (internal quotation marks omitted). And in *United States v. Barrera-Gonzales*, we upheld a reasonable-doubt instruction that did not include the "hesitate to act" formulation. 952 F.2d 1269, 1270-73 (10th Cir. 1992).

Because Instruction 2 adequately instructed the jury regarding reasonable doubt, the district court did not abuse its discretion in declining to give Mr. Martinez's requested burden of proof instruction.

6

## II.    Inferences from Circumstantial Evidence

Mr. Martinez also challenges Instruction 9, which discussed direct and circumstantial evidence and the inferences to be drawn from the evidence.

In his opening brief, Mr. Martinez argues that the Supreme Court has "endorsed the view that when the government's case rests on circumstantial evidence, that evidence 'must be such as to exclude every reasonable hypothesis other than that of guilt.'" Aplt. Opening Br. at 8 (quoting *Holland*, 348 U.S. at 139). He therefore asserts that "the district court was required to instruct the jury sufficiently to instill in their minds that a guilty verdict can be rendered only if there are no reasonable alternative explanations for the conduct." *Id.* at 9. In his reply brief, however, he disclaims any intent to argue "that the district court was required to give an instruction that circumstantial evidence must be such as to exclude every reasonable hypothesis other than guilt." Aplt. Reply Br. at 4. And understandably so, as *Holland* rejected that proposition. *See Holland*, 348 U.S. at 139-40 ("[T]he better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect."). Instead, he clarifies that "he contends that in light of the Court's refusal to give the preferred reasonable-doubt language, the Supreme Court's precedent suggests that additional instruction on circumstantial evidence is warranted and indeed necessary." Aplt. Reply Br. at 4-5. He faults the district court for not including in Instruction 9 a directive to avoid speculation and a reference to the reasonable-doubt standard.

Mr. Martinez asserts that "[t]he jury should have been instructed, as [he] requested, that the jury's inferences must be more than speculation and conjecture—that they instead must flow from logical and probabilistic reasoning." Aplt. Opening Br. at 9. But Instruction 9 adequately conveyed these concepts to the jury. It instructed that "you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience." R. at 52. It continued, "[a]n inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved." *Id.* And then it reiterated that inferences must be reasonable and the jury must reach conclusions based on "reason and common sense." *Id.* These instructions sufficiently indicated to the jury that it should not employ speculation. *See United States v. Flonnory*, 630 F.3d 1280, 1285 (10th Cir. 2011) (holding that a speculation instruction was unnecessary where the jury was instructed it must view the evidence reasonably).

Further, Mr. Martinez asserts that Instruction 9 should have referred to the reasonable-doubt standard. But in more than one-third of the instructions (eight out of a total of twenty-one instructions), the district court referred to the reasonable-doubt standard. One of those references came at the beginning of Instruction 10, immediately following Instruction 9. Because the instructions as a whole adequately conveyed the requirement that the government satisfy the reasonable-doubt standard, Mr. Martinez has not demonstrated the district court erred in declining to include another reference to reasonable doubt in Instruction 9. *See id.*

8

("It is not error to refuse to give a requested instruction if the same subject matter is adequately covered in the general instructions." (internal quotation marks omitted)).

For these reasons, the district court did not abuse its discretion in declining to give Mr. Martinez's requested inferences instruction.

## CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge